**FILED**
2022 May-12  AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| BETTY STREET, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| TALLADEGA CITY BOARD OF | ) | **JURY DEMAND** |
| EDUCATION, a governmental entity, | ) | |
| TONY BALL, as superintendent of | ) | |
| Talladega City Schools and in his | ) | |
| individual capacity, CAITLYN | ) | |
| FREEMON, as Kindergarten teacher | ) | |
| at C.L. Salter Elementary School and | ) | |
| in her individual capacity, PHILLIP | ) | |
| JENKINS, as Principal of C.L. Salter | ) | |
| School and in his individual capacity | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT

---

COMES NOW, the Plaintiff, BETTY STREET ("Street") by and through her attorney of record, for her Complaint against the Defendant, Talladega City Board of Education ("Board"), Tony Ball, Caitlyn Freeman, and Phillip Jenkins states the following:

## I.  **JURISDICTION AND VENUE**

1.  The Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1331 (Federal question) and 28 U.S.C. §1343 (depravation of Constitutional or Federal statutory rights).

2.  Venue is proper pursuant to 28 U.S.C. §1391 (all parties are located within the Northern District of Alabama, Eastern Division).

3.  This suit is authorized and the jurisdiction of the Court in invoked to secure protection of and redress depravation of rights secured by 42 U.S.C. §1981, as amended, the Equal Protection Clause of the United States Constitution, and 42 U.S.C. §1983, providing injunctive and other relief against racial and gender discrimination and retaliation in employment, and relief for violations of federal constitutional or statutory rights. Jurisdiction of this court is also invoked by 42 U.S.C. §1983 providing relief for violations of the First and Fourteenth Amendment.

4.  There are no conditions precedent to the institution of this action under 42 U.S.C. §1981, the Equal Protection Clause, The First and Fourteenth Amendment, or 42 U.S.C. 1983.

5.  All of the allegations of the Complaint under 42 U.S.C. 1981 occurred within four (4) years of the complaint. 28 U.S.C. § 1658(a); *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369 (U.S. 2004); *Baker v. Birmingham Board of Education*, 531 F.3d 1336, 1339 (11ᵗʰ Cir. 2008)(where the 11th Circuit found the District Court

erred in applying the two year 1983 statute of limitation, and held 42 U.S.C. §1981 has a four year statute of limitation pursuant to 28 U.S.C. §1658).

6. All of the allegations of the Complaint under the Equal Protection Clause occurred within two (2) years of the complaint.

7. Through supplemental jurisdiction, this Court's jurisdiction extends over the related state law claims of defamation (libel and slander), invasion of privacy-publication of facts placing the plaintiff in false light, because all such claims arise from a "common nucleus of operative fact."

II.   **PARTIES**

8. Plaintiff, Street, is over the age of nineteen (19) years old, Caucasian, a citizen of the United States, and a resident of Talladega, Alabama located within the Northern District of Alabama, Eastern Division.

9. Defendant, Talladega City Board of Education ("TCBOA") is a governmental entity within the Northern District of Alabama, Eastern Division, is an entity subject to suit under 42 U.S.C. §1981, and is a person under color of state law subject to suit under 42 U.S.C. §1983, the First and Fourteenth Amendment, and the Equal Protection Clause.

10. The Defendant, Caitlyn Freeman ("Freeman"), is over the age of 19, is a citizen of the United States, and is a resident of the State of Alabama, within the Northern District of Alabama, Eastern Division. At all times material to this

Complaint, Freeman was a Kindergarten teacher at C.L. Salter Elementary. She is being sued in her individual capacity.

11. The Defendant, Tony Ball ("Superintendent Ball"), is over the age of nineteen, is a citizen of the United States and is a resident of the State of Alabama, within the Northern District of Alabama, Eastern Division. At all times material to this Complaint, Superintendent Ball was the Talladega City School Superintendent. He is being sued in his individual and official capacity.

12. The Defendant, Phillip Jenkins, ("Jenkins"), is over the age of 19, is a citizen of the United States, and is a resident of the State of Alabama, within the Northern District of Alabama, Eastern Division. At all times material to this Complaint, Jenkins was the Principal of C.L. Salter Elementary. He is being sued in his individual and official capacity.

## III.   **FACTUAL ALLEGATIONS**

13. Street was hired by the TCBOA as a Kindergarten teacher in 2013.

14. Street is a citizen of Talladega County.

15. Street is Caucasian.

16. In 2018 Street filed an EEOC charge alleging harassment, bullying, and inappropriate sexual comments against the Principal, Micah Cook, Superintendent Terry Roller and the TCBOA.

27. Street was assigned more students, and those students were the intensive students.

28. Street spoke with the Superintendent in confidence about being bullied and harassed.

29. After she spoke to the Superintendent, the harassment worsened.

30. On or around July, 2, 2019, Tony Ball was voted into the Superintendent position.

31. In October, 2019, the EEOC issued its right to sue letter.

32. Two weeks after the EEOC issued its dismissal and right to sue letter, Superintendent Ball stated to Street he had concerns with her teaching and explained he would like to observe her teaching.

33. At the time Superintendent Ball made the statement, Street had no reprimands or disciplines, verbal or written, and records showed students went from yellow to green so there was no evidence of performance problems contained in her file.

34. The wording Ball used was identical to something Cook had stated to Street indicating Ball had spoken to Cook.

35. At the time Superintendent Ball made the statement, he had never been in her room or seen her teach.

36. Street told Ball she was teaching from her curriculum, and requested a witness to be present during her observation, and Superintendent Ball got angry with her.

37. During the observation, there were no incidents of poor performance.

38. However, despite the fact there was nothing wrong with her performance, in November or December, 2019, Superintendent Ball required Street to go to R.L. Young to observe classes.

39. Street, through her AEA rep, said this is humiliating and requested to go observe in a different system, but Ball refused her request.

40. Superintendent Ball had Freeman collecting information on Street.

41. Freeman said Street was not doing her job and did not have control of her class which was false.

42. Every time Ball came to the School, Freeman would speak with Superintendent Ball.

43. Superintendent Ball told the parent of a student he was trying to get Street fired but it was harder than he thought it would be to fire a tenured teacher.

44. During this same conversation, Superintendent Ball told the parent "when you hire someone, they need to be black" when speaking of hiring new employees as the children in the school system are 67% black.

45. Superintendent Ball states race becomes an issue on everything, and he complains how he has to answer, "Are they white or black?" when looking at applicants.

46. Superintendent Ball states everything is done on-line, and "A lot of times you don't know whether they are white or black. If the name is Quandarius it's kind of a good clue. If Emily, probably no."

47. Superintendent Ball explains he gets the applications, he "narrows it down to three or four people we want to interview and usually one or two stands out. But sometimes they are 'even-Steven' and you just pick one. It doesn't mean it was bad and that is a similar situation to this other one" when discussing an applicant for a position.

48. Superintendent Ball explains most of the time, if the principal recommends an applicant, he will be okay with it.

49. In or around the Fall of 2020, several teachers reported to Street Freeman said "she was going to get her (Mrs. Street) the last day of school".

50. Because of the way Street was treated by Freeman and because Street was aware Freeman had threatened other employees with violence in the past, Street took this as a threat, and was in fear of imminent battery.

51. The teachers reported to Street Jenkins was aware of the threat made by Freeman against Street in or around May 2020.

52. Jenkins never reported the threat to Street, and she learned of it through these co-workers.

53. Also, a parent notified Street that Freeman was utilizing students to secretly spy on Street and report to her what was going on his her classroom.

54. Freeman admitted she utilized students to spy on Street and apologized to the parent who was upset her child was being used in this manner.

55. On or about May 12, 2020, when Freeman resigned, she wrote a lengthy resignation letter.

56. Jenkins assisted Freeman with writing the letter, and helped her edit out portions that were damaging to Freeman.

57. Freeman and Jenkins' letter contained defamatory language against Street.

58. Freeman's resignation letter stated she suffered "emotional anguish and mental harassment, refusal of collaboration, and continuous verbal abuse… from Street", all of which was false.

59. Freeman further falsely stated, "as long as Mrs. Street is an employee underneath Talladega City School Systems, her constant harassment towards myself and others will keep happening.", all of which was false.

60. The allegations against Street contained in the resignation letter were not truthful.

61. Superintendent Ball accepted Freeman's resignation letter and treated the contents as fact.

62. In or around June, 2020, Street learned of the letter.

63. On or about July 9, 2020, Superintendent Ball, Gloria Thomas, and Street held a meeting wherein Superintendent Ball referenced the resignation letter that contained derogatory statements about Street.

64. In or around January, 2021, Street learned Superintendent Ball, Jenkins, and Freeman circulated the letter around other schools.

65. Freeman, Jenkins, and Superintendent Ball showed and shared the letter with co-workers of Street, employees of other schools, and the Administration.

66. On or about January 15, 2021, the AEA sent a letter on behalf of Street to Superintendent Ball complaining of the defamation, invasion of privacy and threats she suffered from Freeman. The AEA requested this letter be placed in Street's file.

67. On or about January 27, 2021, the AEA requested a copy of Freeman's letter on behalf of Street.

68. On or about February 2, 2021, Superintendent Ball deflected the question and told the AEA representative that if there was a disciplinary action against Street it would be contained in her file, and declined the request to have Street's letter placed in her own personnel file.

69. In or around February, 2021, Street obtained a copy of Freeman's letter from someone whom the letter had been shared in order to defame her personal and professional reputation.

70. Jenkins told several of Street's co-workers to stay away from Street because she is a "trouble maker".

71. Street did not have any reprimands or disciplines in her file at the time of this statement.

72. The only trouble Street had caused was her complaint of gender discrimination.

73. Because of this statement, Street was isolated by co-workers and suffered negative comments from co-workers for years.

74. Street regularly cried at school, on her way home from school, and at home after school due to her treatment.

75. Street just stayed in her room to avoid everyone so she would not suffer from negative treatment.

76. Street sought treatment for her mental health as a result of the treatment she received.

77. Street requested a transfer to another school.

78. Streets requests to transfer to another school were ignored due to the false allegations made against her by Ball, Jenkins, and Freeman.

79. The Talladega City Rule 2.00 governing board meetings encourages citizens

to attend open meetings of the Talladega City Board of Education.

80.  The rules also govern any person desiring to be placed on the agenda. The

rule states, in pertinent part:

B. Addressing the Board.

1. Delegates are permitted to address the Board at all regular Board meetings. Any item to be placed on the agenda of a regular Talladega City Board of Education meeting shall be submitted in writing to the Superintendent's office no later than four o'clock (4:00 p.m.), five (5) working days prior to the meeting at which consideration is desired. This rule shall not preclude the right of any citizen to address the Talladega City Board of Education; however, except for good cause as provided herein, the Talladega City Board of Education shall not take action on any substantive proposal until such matter has been formally placed on the Board agenda. Copies of the tentative agenda for regular meetings shall be made available prior to the scheduled meeting. Copies of the agenda for a special meeting shall be prepared.

2. Any person or group desiring to be placed on the agenda shall file with the Superintendent, by twelve o'clock (12:00) noon at least five (5) working days prior to a meeting, a request to be placed thereon. Such request shall contain the following information:
   a. The name and address of the person making the request;
   b. The organization or group, if any, represented;
   c. Content of the information to be presented; if written material is to be distributed, a copy of such material shall accompany the request;
   d. An estimate of the time necessary for such a discussion;
   e. Specific action desired of the Talladega City Board of Education. The Board may, by a majority vote, have an item placed on the agenda that did not meet the time deadlines

81. Street timely requested, in writing, to be heard before the TCBOA on the

matters of the mental health and physical safety of Talladega City School Board

employees.

82. Before allowing her to be heard, Street was required to type a letter containing exactly what she was going to say to the Board, and said letter had to be approved by the TCBOA before she could speak at the meeting.

83. TCBOA also placed many restrictions on what Street could say in the meeting.

84. Superintendent Ball threatened Street with legal action if she actually named anyone during her statement in efforts to keep her from speaking.

85. Street was not allowed a witness at the meeting even though she had one.

86. Ball listed the regular board meeting as a "closed meeting", and did not list Street on the agenda.

87. The meeting was a regular meeting and was supposed to be broadcast livestream on zoom. However, this meeting was broadcast (live-streamed) on u-tube.

88. Members of the public were denied entry into the meeting, and members of the public stated the u-tube livestream meeting malfunctioned and they were unable to watch it.

89. On or about March 9, 2021, just prior to the Board meeting, Superintendent Ball spoke with Street and asked her not to speak at the meeting because he knew it would reflect badly on him.

90. On or about March 9, 2021, Superintendent Ball admitted to Street Freeman's resignation letter's allegations were reversed, and that it was Caitlyn Freeman who had bullied and harassed Street.

91. Superintendent Ball told others he was talking to Street in attempts to not get her to speak at the meeting.

92. On or about March 9, 2021, Board Member Braswell, listed numerous restrictions and rules Street had to abide by during the meeting.

93. On or about March 9, 2021, Street began to read the preapproved letter to the TCBOA during the regular public board meeting.

94. Street was stopped by the Board chairman and she was not allowed to complete the reading the pre-approved letter.

95. In a later meeting, Principal Darius Williams (black male) had some accusations against the Board when he was not renewed, yet he was allowed to go over the time, he was not given a list of restrictions, and members of the public were allowed to attend the meeting.

96. On or about March 15, 2021, Street requested to address the TCBOA again at the April meeting in order to complete reading the full letter.

97. That same day, TCBOA, through Superintendent Ball, denied Street's request.

98. On or about April 1, 2021, Street formally complained in writing to Associate General Counsel at the Office of General Counsel of the Alabama Department of Education, Mr. Ward that Superintendent Ball, Jenkins and Freeman each violated the Code of Ethics Standard 1: Professional Conduct; Harassment of Colleagues.

99. On or about April 5, 2021, James Ward told Street it appears her concerns fall into two categories (1) bullying and harassment and (2) failure of the local administration to adequately address the bullying and harassment.

100.    To date, nothing has occurred as a result of her complaint.

101.    In or around June, 2021, Street was told by three black co-workers that Freeman told them if anything happened between them and Street that they should throw out the race card—in effect, telling them Street was racist.

102.    Superintendent Lee became Superintendent in July, 2021.

103.    As recent as Monday, May 2, 2022, a brand new teacher told Street was told not to talk to her.

104.    Street began crying, and told the teacher that is what the previous principal did.

105.    Coach Ferrell walked up to Street and the new teacher and confirmed the administration had done this to Street.

IV.   **CLAIMS**

I.    **LIBEL/SLANDER- (against Caitlyn Freeman, Phillip Jenkins, and Superintendent Tony Ball in their individual capacities)**

106.     Freeman and Jenkins prepared Freeman's resignation letter.

107.     Freeman's resignation letter stated she suffered "emotional anguish and mental harassment, refusal of collaboration, and continuous verbal abuse… from Street".

108.     Freeman's resignation letter further falsely stated, "as long as Mrs. Street is an employee underneath Talladega City School Systems, her constant harassment towards myself and others will keep happening."

109.     The allegations against Street contained in the resignation letter were false as she did not harass, she did not refuse to collaborate, and she engaged in no verbal abuse of Freeman or others.

110.     Superintendent Ball accepted Freeman's resignation letter and treated the contents as fact even though he knew the contents were false.

111.     Superintendent Ball admitted to Street he knew the contents of the letter were false.

112.     On or about July 9, 2020, Superintendent Ball, Gloria Thomas, and Street held a meeting wherein Superintendent Ball referenced the resignation letter and the derogatory statements about Street in front of Ms. Thomas.

113.     Freeman, Jenkins, and Superintendent Ball showed and shared the letter with co-workers of Street, staff at other schools, and the Administration.

114.    The teachers who were shown the letter remarked, "So it was Street this whole time" indicating they now believed Street was the harasser and bully.

115.    Jenkins told several of Street's co-workers to stay away from Street because she is "trouble makers" which was false.

116.    Jenkins made sure future administrations told new teachers to stay away from Street as she is a trouble maker.

117.    Street was not a trouble maker.

118.    Street had only complained of discrimination and harassment.

119.    Street was ignored in her request to transfer schools due the defamatory statements contained in the letter and Jenkins statements to stay away from Street as she was a troublemaker.

120.    Street was alienated by co-workers and spoken negatively to for years as recently as May 2, 2022, because of these defamatory statements.

121.    Superintendent Ball spoke with Freeman and had her spy of Street to find anything to have her fired.

122.    Freeman stated Street was not doing her job and could not control her class, which was false.

123.    Superintendent Ball and Cook both stated they had problems with Street's performance, which was false as she had no reprimands or disciplines in her

file and her students were moving from yellow to green at the time the statements were made.

124.    The statements of Ball, Jenkins, and Freeman were all made with malice in attempts to get Street fired.

125.    Street was required to go observe other classes in front of her peers as a result of the defamatory statements that there were concerns with her teaching, she was not doing her job and could not control her class.

126.    Superintendent Ball told the parent of a student he was trying to get Street fired but it was proving difficult to fire a tenured teacher.

127.    As a proximate cause and cause in fact to the libelous and slanderous statements made by Freeman, Superintendent Ball, and Jenkins, Street was caused the following injuries: was ignored by the administration when she requested a transfer losing employment opportunities, she was alienated from her co-workers, she suffered negative comments from her co-workers for years, she suffered extreme emotional distress including fear for her physical safety, fear for the safety of her position in her career, damage to reputation, embarrassment, humiliation, inability to sleep at night, stress, anxiety, crying, depression, and use of sick days and leave to address her emotional state, and out of pocket expenses.

128.    On the basis of the foregoing, Street respectfully demands the following relief:

**a.** Compensatory damages, lost wages, and emotional distress allowed by law against the defendants Superintendent Ball, Freeman and Jenkins.

**b.** Punitive damages allowed by law against the defendants Superintendent Ball, Freeman and Jenkins.

**c.** Attorney's fees and costs against the defendants, Superintendent Ball, Freeman and Jenkins.

**d.** Order such other and further relief as the Court may deem just and proper.

## II.   INVASION OF PRIVACY- PUBLICATION OF FACTS PLACING STREET IN FALSE LIGHT (against Superintendent Ball, Freeman and Jenkins in their individual capacity)

129.    Freeman and Jenkins prepared Freeman's resignation letter.

130.    Freeman's resignation letter stated she suffered "emotional anguish and mental harassment, refusal of collaboration, and continuous verbal abuse… from Street".

131.    Freeman's resignation letter further falsely stated, "as long as Mrs. Street is an employee underneath Talladega City School Systems, her constant harassment towards myself and others will keep happening."

132.    The allegations against Street contained in the resignation letter were false as she did not harass, she did not refuse to collaborate, and she engaged in no verbal abuse of Freeman or others.

133.    Superintendent Ball accepted Freeman's resignation letter and treated the contents as fact even though he knew the contents were false.

134.    Superintendent Ball admitted to Street he knew the contents of the letter were false.

135.    On or about July 9, 2020, Superintendent Ball, Gloria Thomas, and Street held a meeting wherein Superintendent Ball referenced the resignation letter and the derogatory statements about Street in front of Ms. Thomas.

136.    Freeman, Jenkins, and Superintendent Ball showed and shared the letter with co-workers of Street, staff at other schools, and the Administration.

137.    The teachers who were shown the letter remarked, "So it was Street this whole time" indicating they now believed Street was the harasser and bully.

138.    Jenkins told several of Street's co-workers to stay away from Street because she is "trouble makers" which was false.

139.    Jenkins made sure future administrations told new teachers to stay away from Street as she is a trouble maker.

140.    Street was not a trouble maker.

141.    Street had only complained of discrimination and harassment.

142.    Street was ignored in her request to transfer schools due the defamatory statements contained in the letter and Jenkins statements to stay away from Street as she was a troublemaker.

143.     Street was alienated by co-workers and spoken negatively to for years as recently as May 2, 2022, because of these defamatory statements.

144.     Superintendent Ball spoke with Freeman and had her spy on Street.

145.     Freeman stated Street was not doing her job and could not control her class, which was false.

146.     Superintendent Ball and Cook both stated they had problems with Street's performance, which was false as she had no reprimands or disciplines in her file at the time the statements were made, and records establish her students were moving from yellow to green.

147.     The statements of Ball, Jenkins, and Freeman were all made with malice in attempts to get Street fired.

148.     Street was required to go observe other classes in front of her peers as a result of the defamatory statements that she was not doing her job and could not control her class.

149.     Superintendent Ball told the parent of a student he was trying to get Street fired but it was proving difficult to fire a tenured teacher.

150.     As a proximate cause and cause in fact to the statements made by Freeman, Superintendent Ball, and Jenkins, which placed Street in a false light, Street was caused the following injuries: was ignored by the administration when she requested a transfer losing employment opportunities, she was alienated from

her co-workers, she suffered extreme emotional distress including fear for her physical safety, fear for the safety of her position in her career, damage to reputation, embarrassment, humiliation, inability to sleep at night, stress, anxiety, crying, depression, use of sick days and leave to address her emotional state, out of pocket expenses.

151.    On the basis of the foregoing, Street respectfully demands the following relief:

**a.** Compensatory damages, lost wages, and emotional distress allowed by law against the defendants Superintendent Ball, Freeman and Jenkins.

**b.** Punitive damages allowed by law against the defendants Superintendent Ball, Freeman and Jenkins.

**c.** Attorney's fees and costs against the defendants, Superintendent Ball, Freeman and Jenkins.

**d.** Order such other and further relief as the Court may deem just and proper.

## III.   <u>1983 – FIRST AMENDMENT- Prior Restraint (against Talladega City School Board and Superintendent Tony Ball in his official and individual capacity)</u>

152.     Street is a citizen of Talladega and an employee of Talladega City School Board.

153.     Street requested to discuss the bullying and harassment she and other employees were suffering as an employee of Talladega City School Board which was being ratified by the Administration, which is a matter of public concern because the teachers and children who attended the school could be effected by such conduct.

154.     Street requested to discuss mental health and safety of Talladega City School Board employees, which is matter of public concern because the teachers and children who attended the school could be effected by such conduct.

155.     Street wanted to defend the claims against her that were made by Caitlyn Freeman as she was not given an alternative forum to do so.

156.     Superintendent Ball denied Street's request for her AEA letter to be placed her personnel file.

157.     Restrictions were placed on the contents what Street could say during the regular board meeting.

158.     Street's entire statement was limited by restrictions, and had to be approved before she could make the statement during the meeting.

159.     Superintendent Ball attempted to get Street to not speak at the meeting on more than one occasion.

160.     Superintendent Ball threatened Street she would be sued if she used the names of the people involved.

161.    The U-tube live-stream of the meeting was not accessible to the main public and it should have been on zoom.

162.    TCBOA stopped Street while reading her pre-approved statement.

163.    Superintendent Ball and TCBOA denied Street the ability to continue to read her pre-approved letter to completion at the following meeting.

164.    Street was denied the ability to speak of matters of public concern to the Board and that ability was severely limited.

165.    There were no justifications for the restrictions to Street's speech, and they were not narrowly tailored to serve a significant government interest.

166.    The restrictions placed on Street's speech were directly related to the content of her speech as the content of her speech had to be pre-approved, she could not name any individuals involved, and she was stopped before she could finish the pre-approved content.

167.    There were no ample alternative channels for communication of the information after the denial from TCBOA.

168.    The Board granted Ball discretion as to whether Street could speak at the next hearing, and he denied such request.

169.    As a proximate cause and cause in fact to Ball and the TCBOA refusing to allow Street to speak on matters of public concern at the meeting, Street was caused the following injuries: was ignored by the administration when she requested

a transfer losing employment opportunities, she was alienated from her co-workers, she suffered extreme emotional distress including fear for her physical safety, fear for the safety of her position in her career, damage to reputation, embarrassment, humiliation, inability to sleep at night, stress, anxiety, crying, depression, and use of sick days and leave to address her emotional state, and out of pocket expenses.

170.     On the basis of the foregoing, Street respectfully demands the following relief:

   **a.** Compensatory damages and lost wages allowed by law against the defendants Superintendent Ball, and TCBOA.

   **b.** Punitive damages allowed by law against the defendants Superintendent Ball.

   **c.** Attorney's fees and costs against the defendants, Superintendent Ball, and TCBOA.

   **d.** Order such other and further relief as the Court may deem just and proper.

**IV.   1983- First Amendment – Retaliation (Against Ball, Jenkins, and TCBOA)**

171.     Street complained to the EEOC of matters that are of public concern, which was discrimination, harassment and bullying of herself and others, in attempt to protecting the mental health of employees who are responsible for the children of the TCBOA on a day to day basis.

172.     Street also complained to the Board in the form of a written letter of matters that are of public concern, which is discrimination, harassment and bullying of herself and others, in attempt to protecting the mental health of employees who are responsible for the children of the TCBOA on a day to day basis.

173.     As a result of these two protected forms of speech, Street was labelled a trouble maker, co-workers were told to stay away from her, co-workers made negative comments to her on a regular basis, Ball attempted to terminate Street's employment, spied on her through Freeman, made her do remedial training for false performance problems, and attempted to tarnish Streets reputation by disseminating Freeman and Jenkins letter to co-workers, teachers at other schools and administration.

174.     As a proximate cause and cause in fact to Ball, Jenkins, and the TCBOA retaliated against Street for speaking on matters of public concern at the EEOC and in the letter she was going to recite at the Board meeting, Street was caused the following injuries: was ignored by the administration when she requested a transfer losing employment opportunities, she was alienated from her co-workers, she suffered extreme emotional distress including fear for her physical safety, fear for the safety of her position in her career, damage to reputation, embarrassment, humiliation, inability to sleep at night, stress, anxiety, crying, depression, and use of sick days and leave to address her emotional state, and out of pocket expenses.

175.     On the basis of the foregoing, Street respectfully demands the following

relief:

    **a.** Compensatory damages and lost wages allowed by law against the
defendants Superintendent Ball, Jenkins, and TCBOA.

    **b.** Punitive damages allowed by law against the defendants
Superintendent Ball, and Jenkins.

    **c.** Attorney's fees and costs against the defendants, Superintendent Ball,
Jenkins, and TCBOA.

    **d.** Order such other and further relief as the Court may deem just and
proper.

**V.     1983 – 1981- Hostile Work Environment (against Ball, Jenkins, Freeman in their individual capacities and TCBOA)**

176.     Street is Caucasian.

177.     Superintendent Ball, Jenkins, and Freeman's conduct was unwanted
and created a hostile work environment.

178.     Ball, Jenkins and Freeman's conduct was based on her race, as
Superintendent Ball admitted he was trying to fire Street, and that he wanted to hire
black employees.

179.     Freeman, Jenkins and Ball all worked in concert in order to have Street
fired so she could be replaced by a black applicant.

180.     Freeman spied on Street to assist Ball in firing her.

181.     Freeman falsely reported Street was not doing her job and was not handling her students.

182.     Jenkins told employees they should stay away from Street and falsely accused her being a trouble maker causing Street to be alienated and spoken negatively to.

183.     Freeman told black employees that if anything happened between them and Street they should use the race card, effectively telling them Street was a racist which was false.

184.     The conduct of Freeman, Jenkins, and Ball was unwanted and offensive to Street and to a reasonable person in Street's position.

185.     As a result of their racially motivated hostile work environment, Street was told she had performance problems when she didn't, she was required to go observe other classes which was humiliating, her co-workers alienated her and made negative comments to her on a regular basis all of which was so severe and pervasive that it caused her to cry and stay alone in her classroom to avoid everyone and it prevented her from obtaining a transfer to another school; i.e. it altered the terms and conditions of her employment.

186.     Their discriminatory intimidation, ridicule and insult was sufficiently severe to alter the conditions of Street's employment

187.     Street notified the TCBOA of the harassment and bullying and these defendants received no discipline or reprimands whatsoever.

188.     TCBOA had a pattern and practice of placing black employees in positions and following recommendations of Ball.

189.     As a proximate cause and cause of the hostile work environment made by Freeman, Superintendent Ball, Jenkins, and the TCBOA, Street was caused the following injuries: was ignored by the administration when she requested a transfer losing employment opportunities, she was alienated from her co-workers, she suffered extreme emotional distress including fear for her physical safety, fear for the safety of her position in her career, damage to reputation, embarrassment, humiliation, inability to sleep at night, stress, anxiety, crying, depression, and use of sick days and leave to address her emotional state.

190.     On the basis of the foregoing, Street respectfully demands the following relief:

> **a.** Compensatory damages, lost wages, and emotional distress allowed by law against the defendants Superintendent Ball, Freeman, Jenkins and TCBOA.
>
> **b.** Punitive damages allowed by law against the defendants Superintendent Ball, Freeman, and Jenkins.

    **c.** Attorney's fees and costs against the defendants, Superintendent Ball, Freeman, Jenkins and TCBOA.

    **d.** Order such other and further relief as the Court may deem just and proper.

## VI.   <u>1983 based on 1981 and 1983 based on Equal Protection – Disparate treatment (against Tony Ball in his individual capacity, and TCBOA)</u>

191.    Street is a white female

192.    Darius Williams is black male.

193.    Street suffered different treatment from other similarly situated employee Darius Williams, when she was denied the opportunity to speak at the Board meeting based on her race and gender including but not limited to:

    a. Darius Williams was not stopped and given additional time to make his statement during regular meeting,

    b. People were allowed to be present during the meeting when they were refused entry to the meeting with Street and there was no effective access on line.

    c. A person was allowed to speak on his behalf at the meeting when Street was not allowed anyone to speak on her behalf.

194.    As a proximate cause and cause of the disparate treatment Superintendent Ball and the TCBOA, Street was caused the following injuries: was ignored by the administration when she requested a transfer losing employment

opportunities, she was alienated from her co-workers, she suffered extreme emotional distress including fear for her physical safety, fear for the safety of her position in her career, damage to reputation, embarrassment, humiliation, inability to sleep at night, stress, anxiety, crying, depression, and use of sick days and leave to address her emotional state, and out of pocket expenses.

195.    On the basis of the foregoing, Street respectfully demands the following relief:

      **d.** Compensatory damages, lost wages, and emotional distress allowed by law against the defendants Superintendent Ball and TCBOA.

      **e.** Punitive damages allowed by law against the defendants Superintendent Ball

      **f.** Attorney's fees and costs against the defendants, Superintendent Ball, and TCBOA.

      **g.** Order such other and further relief as the Court may deem just and proper.

**VII.   1983- Equal Protection – Retaliation (against Ball, Jenkins, Freeman, and TCBOA**

196.    Street complaint to the EEOC of gender discrimination.

197.    Ball, Jenkins, Freeman, and TCBOA retaliated against Street by trying to fire her, spying on her, falsely reporting performance problems, requiring her to

do remedial training (observe other classes) in front of her peers, writing defamatory statements about her and disseminating it to her co-workers, teachers at other schools, and the administration, labeling her as a trouble maker, telling teachers to stay away from her because she is a trouble maker, causing teachers to make negative comments to her for years and as recently as May 2, 2022, and refusing to allow her to fully speak at the Board meeting.

198.    As a proximate cause and cause of the disparate treatment Superintendent Ball and the TCBOA, Street was caused the following injuries: was ignored by the administration when she requested a transfer losing employment opportunities, she was alienated from her co-workers, she suffered extreme emotional distress including fear for her physical safety, fear for the safety of her position in her career, damage to reputation, embarrassment, humiliation, inability to sleep at night, stress, anxiety, crying, depression, and use of sick days and leave to address her emotional state, and out of pocket expenses.

199.    On the basis of the foregoing, Street respectfully demands the following relief:

> **a.** Compensatory damages, lost wages, and emotional distress allowed by law against the defendants Superintendent Ball and TCBOA.
>
> **b.** Punitive damages allowed by law against the defendants Superintendent Ball

    **c.** Attorney's fees and costs against the defendants, Superintendent Ball, and TCBOA.

    **d.** Order such other and further relief as the Court may deem just and proper.

## V.    <u>**PRAYER FOR RELIEF**</u>

200.    Wherefore, Street respectfully prays that this Honorable Court assume jurisdiction of this action and award her the following relief:

    a. Enter declaratory judgment that the Defendants policies, practices, and procedures complained of herein have violated and continue to violate Street's First Amendment Rights, her right to Equal Protection, her rights to be free from Discrimination in the workplace, her rights to be from retaliation for complaining of unlawful conduct in the workplace.

    b. Grant Street a permanent injunction enjoining the Defendants' their Agents, Successors, Employees, Attorneys, and those acting in concert with the Defendant or at Defendant's request from violating the rights listed above in subsection a.

    c. Grant Street an Order requiring the Defendant to make her whole by granting the appropriate declaratory relief, compensatory damages,

including damages for emotional distress, liquidated damages,

punitive damages, interest, attorney's fees, expenses and costs;

d.  Street prays for such other, further, different or additional relief as

justice may require.

**THE PLAINTIFF DEMANDS A TRIAL STRUCK BY JURY**


Patricia A. Gill
ASB-0780-I66P
Attorney for Plaintiff

OF COUNSEL
PATRICIA A. GILL, P.C.
PO Box 55304
Birmingham, AL 35255
Phone: (205) 789-1906
Fax: (205) 930-9809
Email: patriciagill@yahoo.com


**PLEASE SERVE THE DEFEDNANTS BY CERTIFIED MAIL:**

**Talladega City Board of Education**
**501 South Street E**
**Talladega, AL 35160**

**Tony Ball**
**826 Highland Avenue**
**Anniston, AL 36207**

**Phillip Jenkins**
**2064 Bullocks Ferry Rd**
**Talladega, AL 35160**

Caitlyn Freeman
5625 Renfroe Road
Talladega, AL 35160