FILED
2023 Mar-14  AM 10:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**BETTY STREET,**
     Plaintiff,

**v.**

**TALLADEGA CITY BOARD OF
EDUCATION, *et al.*,**
     Defendants.

**Case No. 1:22–cv–614–CLM**

## <u>MEMORANDUM OPINION</u>

Betty Street was a Kindergarten teacher in the Talladega City School System. During that time, Street alleges that she was harassed, defamed, retaliated against, and denied a fair opportunity to publicly speak against her mistreatment. So Street has sued four defendants: the Talladega City Board of Education, Superintendent Tony Ball, Principal Phillip Jenkins, and fellow Kindergarten teacher Caitlyn Freemon.

Principal Jenkins was only recently served (doc. 22) and has yet to respond to Street's complaint against him. The other three defendants have moved to dismiss Street's claims against them. (*See* Docs. 12, 13). The court **grants** their motions to dismiss some claims, and **denies** their motions on others:

- **Count 1 (defamation)**: the court denies Ball and Freemon's motion to dismiss;
- **Count 2 (false light)**: the court denies Ball and Freemon's motion to dismiss;
- **Count 3 (First Amendment prior restraint)**: the court grants all Defendants' motions to dismiss;
- **Count 4 (First Amendment retaliation)**: the court grants all Defendants' motions to dismiss;

- **Count 5 (hostile work environment)**: the court grants the Board's motion to dismiss but denies Ball and Freemon's motion;
- **Count 6 (Equal Protection disparate treatment)**: the court grants Ball and Freemon's motion to dismiss but denies the Board's motion; and,
- **Count 7 (Equal Protection retaliation)**: the court grants all Defendants' motions to dismiss.

The court explains its rulings, after it recounts the facts alleged by Street.

## STATEMENT OF THE ALLEGED FACTS

Betty Street, a white female, was hired by Talladega City Schools to teach Kindergarten. While teaching, Street says she was harassed, bullied, and subjected to inappropriate sexual comments. So Street filed an EEOC complaint against her school principal, the Superintendent of the school system, and the Talladega City Board of Education.

Street says that her plight got worse from there.

1. <u>The resignation letter</u>: Two weeks after the EEOC issued its right to sue letter, new Superintendent Tony Ball told Street that he was concerned about her teaching, even though Street had no negative employment or performance records. Superintendent Ball told Street that, because he was concerned, he wanted to observe her in the classroom. Street requested that a witness be present for that observation, which she says upset Ball. Even though the observation revealed no poor performance, Ball required Street to observe other teachers in a different system.

Superintendent Ball told the parent of a student that he wanted to fire Street, but it was difficult because she had tenure. He also told that parent that he wanted to hire black teachers because most students were black.

At the same time, Superintendent Ball had Street's fellow Kindergarten teacher, Caitlyn Freemon, collect information on Street. Freemon, in turn, enlisted students to spy on Street and report what was happening in Street's classroom. Freemon then falsely reported to Superintendent Ball that Street had no control of her classroom.

Other teachers told Street that Freemon said she was going to "get" Street on the last day of school. The school principal, Phillip Jenkins, knew about the threats, but refused to act or tell Street about them. In any event, Street took the threat of physical violence seriously because, she says, Freemon had a record of threatening others with violence.

Freemon never attacked Street; instead, she resigned. With Superintendent Jenkins' help, Freemon wrote a resignation letter that said she (Freemon) suffered "emotional anguish and mental harassment, refusal of collaboration, and continuous verbal abuse from Street." She also wrote that "as long as Street is an employee underneath Talladega City School Systems, her constant harassment towards myself and others will keep happening."

Street says that Freemon, Superintendent Ball, and Principal Jenkins all knew these statements were false. Yet the trio shared the letter with Street's co–workers, employees at other Talladega City Schools, and the Administration.

Principal Jenkins didn't stop there. He warned Street's co-workers to stay away from Street because she was a troublemaker, even though Street had no negative employment history in her file. Altogether, this caused Street to seek mental health treatment and request to transfer to another school, which was ignored.

2. <u>The School Board Meeting</u>: Street wanted to publicly tell the School Board about these incidents and discuss the mental health and physical safety of employees in the district. In compliance with Board policy, Street wrote a letter to the Board that detailed what she wanted to say during the meeting.

The Board subsequently restricted what topics Street could discuss and prevented her from bringing a witness. Superintendent Ball threatened to sue Street if she named anyone during her remarks.

Later, Superintendent Ball admitted to Street that he knew Freemon's letter was backwards; that Freemon was the bully, not Street. Ball asked Street not to speak at the meeting because her remarks would reflect badly on him.

But Street was determined to speak. So Superintendent Ball left Street off the agenda and closed the meeting to public entry. Despite Board meetings usually being broadcast on Zoom, the Board streamed this meeting on YouTube instead. The YouTube stream failed, so members of the public couldn't watch it.

When Street started to read her preapproved letter, the Board chair stopped her and did not allow her to continue speaking. Street requested to read her full letter at a future board meeting, but the Board, through Superintendent Ball, denied that request.

3. <u>The complaint</u>: The next month, Street complained to the Alabama Department of Education that Ball, Jenkins, and Freemon harassed her. Nothing has come of that complaint. In the months that followed, three of Street's black co-workers told Street that Principal Freemon told them to "throw out the race card" if anything happened between them and Street. And a new teacher told Street that she was instructed not to talk to Street.

So Street sued the School Board, Ball, Freemon, and Jenkins. She alleges Libel, Slander, and Invasion of Privacy/False light claims against Ball, Freemon, and Jenkins in their individual capacities. She brings one First Amendment claim for prior restraints against the Board and Ball in his official and individual capacities, and another First Amendment Claim for retaliation against Ball, Jenkins, and the Board. She brings a hostile work environment claim against the Board, and Ball, Jenkins, and Freemon in their individual capacities. And she brings two Equal

Protection claims—one for disparate treatment against the Board and Ball in his individual capacity, and another for retaliation—against Ball, Jenkins, Freemon, and the Board.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 556).

## DISCUSSION

### A.   Official Capacity Claims Against Ball

Superintendent Ball argues that the official capacity claims against him should be dismissed as redundant of the claims against the Board. "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). As the circuit court reasoned in *Busby*, "[t]o keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury." *Id.*

The court agrees. The official capacity claims against Ball are "functionally equivalent" with the claims against the Board, so keeping Ball as a defendant would be redundant and could cause future confusion.

As a result, circuit precedent requires the court **DISMISS** all claims against Ball in his official capacity.

## B. Individual Counts

The court now turns to the individual counts.

- **Count 1: Libel & Slander (Ball and Freemon)**

Street alleges defamation against the individual defendants in their individual capacities—libel against Freemon for writing the resignation letter, and slander against Freemon and Superintendent Ball for the comments they made to others about Street's job performance.

According to Street, Freemon's resignation letter says that Freeman suffered "emotional anguish and mental harassment, refusal of collaboration, and continuous verbal abuse . . . from Street" and that "as long as Mrs. Street is an employee underneath Talladega City School Systems, her constant harassment towards myself and others will keep happening." (Doc. 1 ¶¶ 107, 108). And Street says that Freemon and Ball talked to others about the letter, telling other employees to stay away from Street because she is a troublemaker and that she had performance issues with her job. Ball even told the parent of a student he was trying to get Street fired but that it was difficult because she was tenured.

To state an ordinary claim for defamation under Alabama law, the plaintiff must plausibly allege: (1) "a false and defamatory statement concerning the plaintiff"; (2) "an unprivileged communication of that statement to a third party"; (3) "fault amounting at least to negligence on the part of the defendant"; and (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 186 (Ala. 2016).

Taking Street's allegations as true, Street has sufficiently pleaded a defamation claim. She alleged that the letter of resignation and statements made about her were false, (Doc. 1 ¶¶ 108, 109), that the letter

and the statements were communicated to other school system employees and the parent of a student (*Id.* ¶¶ 112, 113, 115, 116, 126), that the defendants acted with malice because they knew the statements were false (*Id.* ¶¶ 111, 124), and that the statements caused special harm by subjecting Street to public ridicule and contempt, among other things (*Id.* ¶ 127).

Ball and Freeman argue that the second element—publication to a third party—is not met because the statements were only shared with other employees of the school system. It's true that communication "by a corporate employee to a fellow corporate employee in the course of transacting the corporation's business and in the line of their duty as employees of the corporation . . . is not sufficient publication to sustain an action for libel." *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1093 (Ala. 1988). But Street has sufficiently pleaded facts to distinguish this case from that rule—*i.e.*, that Freemon's statements were communicated to teachers at different schools and that Ball's statements were communicated to the parent of a student. So the court **DENIES** the defendants' motion to dismiss Count 1.

- **Count 2: False Light Invasion of Privacy (Ball and Freemon)**

Street next sues Ball and Freemon in their individual capacities for invasion of privacy stemming from Freemon's resignation letter and the statements they made about Street's job performance. Street alleges those statements placed Street in a false light in violation of Alabama law.

In Alabama, "false light" invasion of privacy is defined as:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of

> the publicized matter and the false light in which the other
> would be placed.

*Schifano v. Greene Cnty. Greyhound Park, Inc.*, 624 So.2d 178, 180 (Ala. 1993) (citing Restatement (Second) of Torts, § 652E (1977)).

Defendants argue that Street has failed to plead a viable false light claim because she did not allege the defendants communicated the alleged false information to the public at large—*i.e.*, give the statements sufficient publicity. But Street alleges that the resignation letter was given to her co-workers, employees at other schools, and the administration. Street alleges that she even received a copy of the letter from someone the defendants gave the letter to. Street also alleges that other teachers discussed the letter, and that it made them believe Street was the problem. (Doc. 1 ¶ 114). Plus, Superintendent Ball discussed Street's performance with the parents of a student. (*Id.* ¶¶ 63–65, 69, 43).

These statements, taken as true, state a claim that the statements were widely disseminated and became public knowledge. Discovery will help determine whether the false statements were communicated "to the public at large, or to so many persons that the matter must be regarding a substantially certain to become one of public knowledge." *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000). But at this stage, Street has sufficiently pleaded a claim for false light invasion of privacy. So the court **DENIES** the defendants' motion to dismiss Count 2.

- **Count 3: First Amendment, prior restraint (Board and Ball)**

Street alleges that the Board and Ball restricted and prohibited her attempts to address the Board in violation of her First Amendment rights, and those restrictions acted as a prior restraint.

For a public employee to sue their government employer under the First Amendment, "the employee must show that he or she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. vs. Guarnieri*, 564 U.S. 379, 386 (2011); *Connick v. Myers*, 461 U.S. 138, 147 (1983). "If an employee does not . . . address a matter of public concern, 'a

federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'" *Id.*

Both defendants argue that Street has failed to state a claim because her speech did not address or implicate a matter of public concern. And Ball argues that even if it did, the claim against him should be dismissed because he lacked the authority to deprive her of her claimed First Amendment rights.

1. <u>Public Concern</u>: Speech involves a matter of public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146. Courts consider the "content, form, and context" of the employee's speech to determine whether the speech addresses a matter of public concern. *Rankin*, 483 U.S. at 384–85. "In assessing the content of a public employee's speech, we look to whether the speech communicates a 'subject of legitimate news interest, a subject of general interest and of value and concern to the public at the time.'" *Mitchell v. Hillsborough Cnty*., 468 F.3d 1276, 1284 (11th Cir. 2006) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004)). As to form, "[t]he mere fact that [] speech was made to coworkers or to supervisors rather than directed at the general public does not remove the speech from the category of public concern." *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005).

Street argues that her statements involved more than complaints about workplace conditions; they instead implicated broader public concerns. For example, she argues that her EEOC claim "sought to combat discrimination, bullying, and harassment" by the Administration and her co–workers. (Doc. 17 at 6). She also says that the statement she sought to read to the Board addressed unlawful conduct by the Administration and her co–workers, not just private grievances. (*Id.*). And Street points out that she tried to read her letter to the board in a meeting open to the public but was prevented from doing so.

Her EEOC charge states that "I and other teachers [sic] were subjected to harassment, bullying, intimidation, threats, and inappropriate sexual language . . . ." (Doc. 12–1). In that charge, she described her environment as "unsafe" and "retaliatory." (*Id.*). She alleges she wanted to speak to the Board "on the matter of the mental health and physical safety of Talladega City School Board employees." (Doc. 1, ¶ 81). She alleged that Jenkins and Ball involved other teachers and employees, telling them not to associate with Street. (*Id.* ¶¶ 70, 103, 105). And she alleges students spied on her. (*Id.* ¶¶ 53–54). She also notes that Ball, Jenkins, and Freemon shared Freemon's resignation letter with other people in the school, other schools, and the administration, pushing the matter into the public sphere. (*Id.* ¶¶ 63–65).

But even taking those allegations as true, they fail to invoke a matter of public concern that rises to the level required to state a claim. The First Amendment "does not empower [employees] to 'constitutionalize the employee grievance.'" *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) (citing *Connick,* 461 U.S., at 154). That's what Street's complaint amounts to: an employee grievance. Despite her allegations that some members of the public were involved, the root of her complaints to the Board and to the EEOC were that she was mistreated by the Board and its employees. While that may be true and sufficient to establish other claims, the content, form, and context of her speech fail to establish that she was speaking on a matter of public concern.

2. Ball's authority: Even if Street were speaking on a matter of public concern, her claim against Ball would fail because he lacked the authority to deprive her of her claimed First Amendment rights. Under Alabama law, the Superintendent lacks the authority to dictate how the Board conducted its meetings, the Superintendent serves at the pleasure of the Board, and the Superintendent has no vote on matters that come before the Board for its consideration. See Ala. Code § 16–12–1(a); 16– 12– 3(f). And according to Ball, the Board may even go around him to allow individuals to speak who did not properly file a request with the Superintendent. Ball also points to Street's complaint, which says that the

Board Chairman, not Ball, prevented her from completing her presentation—and it was the Board, not Ball, who denied her later request to read her letter. (Doc. 1 ¶¶ 93–94, 97).

In response, Street argues that the Superintendent is the CEO of the Board and acts in concert with the Board. Ala. Code § 16–12–3(a); 16–12–3(b). She says that Ball threatened legal action based on the content of her speech, tried to otherwise persuade Street not to speak, and ultimately made the decision to deny Street access to speak again. But there is nothing to suggest that Ball could act alone as Superintendent to restrain Street from speaking at the Board meeting or at future Board meetings. Instead, both the complaint and Alabama law establish that it was the Board as a whole who could make that call.

So the court will dismiss Count 3 against the Board and Ball.

- **Count 4: First Amendment, retaliation (Board and Ball)**

Next, Street alleges that Superintendent Ball and the Board violated her First Amendment right by retaliating against her for filing an EEOC complaint and writing a letter to the Board about her mistreatment. But to state a valid claim that the defendants retaliated against her for exercising her First Amendment rights, Street must establish that she was speaking on a matter of public concern. *See Borough of Duryea, Pa. vs. Guarnieri*, 564 U.S. 379, 386 (2011); *Connick*, 461 U.S. at 147. As explained in Count 3, neither Street's letter to the Board nor her EEOC complaint involved matters of public concern, so this First Amendment claim must also fail. As also explained in Count 3, Ball did not have the authority to deprive Street of her ability to speak at the Board meeting.

As a result, the court will **GRANT** the defendants' motions to dismiss Count 4.

- **Count 5: Hostile Work Environment (all defendants)**

Street next brings a hostile work environment claim under §1981 and §1983, alleging that the Board, plus Ball and Freemon in their individual capacities, subjected her to a hostile work environment based on her race.[1] She also alleges that Ball and Freemon worked in concert to fire her and replace her with a black applicant, spied on her, told other employees lies about her, told other employees to stay away from her, and told other employees that she was racist.

1. <u>The Board</u>

The Board argues that Street's hostile work environment claim fails because Street did not allege that the Board established or maintained a hostile work environment under Board policy, which is required to state a claim against it. The Board is correct that a hostile work environment claim against the Board must be made under a policy and may not depend on a respondeat superior theory. *See Yates v. Cobb Cnty. Sch. Dist.*, 687 F. App'x. 866, 872 (11th Cir. 2017) (unpublished) (holding that a school board may not be held liable under §1983 based on a respondeat superior theory). Because Street has not alleged the Board established, maintained, or endorsed the alleged hostile work environment via Board policy, the court **GRANTS** the Board's motion to dismiss the hostile work environment claim against it.

2. <u>The Individual Defendants</u>

A plaintiff may bring two types of hostile work environment claims: one based on discrimination, the other based on retaliation. *Babb v. Sec'y,*

---

[1] Claims brought under 42 U.S.C § 1981 through 42 U.S.C § 1983 are subject to the same requirements of proof and analytical framework as Title VII claims. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (Title VII and § 1981 have the "same requirements of proof and use the same analytical framework"); *Cross v. State of Ala., State Dep't. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995) ("When [S]ection 1983 is used as a parallel remedy for violation of [Title VII], the elements of the two causes of action are the same.").

*Dep't of Veterans Affs.*, 992 F.3d 1193, 1206–07 (11th Cir. 2021).[2] These claims differ in one primary way—for a discrimination-based claim, the plaintiff must prove his employer was responsible for "severe or pervasive" harassment based on the plaintiff's protected characteristic. *Adams v. Austal*, 754 F.3d 1240, 1249 (11th Cir. 2014); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (holding that to establish a hostile work environment claim, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.").

To prove the "severe or pervasive" element, Street must show her work environment was both subjectively and objectively hostile. *Smelter v. Southern Home Care Services, Inc.*, 904 F.3d 1276, 1285 (11th Cir. 2018). That is, she must first establish that she "subjectively perceive[d] the environment to be abusive," and then prove that her work environment was objectively one "that a reasonable person would find hostile or abusive." *Harris v. Forklift systems, Inc.*, 510 U.S. 17, 21 (1993).

Ball and Freemon argue that this claim must fail because Street does not allege that any of actions they took were based on race. But at least two of Street's allegations directly implicate her race. She alleges that Ball told a parent he was trying to have Street fired and wanted to replace her with someone who is black. (Doc. 1 ¶¶ 43–46). And she alleges that Freemon told black employees to use the race card with Street. (*Id.* ¶¶ 32, 36–38, 101). Taking these allegations as true, a reasonable juror could find that Ball and Freemon's actions were based on race.

As for pleading that the harassment was severe and pervasive, Street alleges that Ball had Freemon spy on Street (*Id.* ¶ 40); Ball made up performance problems to schedule a time to observe Street teach and became angry when Street requested a witness for the observation (*Id.* ¶¶ 32–37); Ball forced Street to observe other classes and rejected her requests to observe in a different school system (*Id.* ¶¶ 32, 36–39); and

---

[2] Street does not plead a retaliatory hostile work environment claim.

that Ball knew the letter Freemon and Jenkins wrote about Street was false, but did nothing about it (*Id.* ¶¶ 106–109, 111).

Street also alleges that Freemon said she was going to "get" Street on the last day of school (*Id.* ¶ 49), that Freemon had threatened other employees with violence in the past, that Street took Freemon's treatment as a threat and that she was in fear of an imminent battery (*Id.* ¶ 50), and that Freemon prepared and wrote a false letter about Street (*Id.* ¶¶ 106–109, 111).

Street alleges that these acts collectively made her feel defamed and that her privacy was invaded (*Id.* ¶¶ 57–61, 66), that she was isolated from her co-workers to the point of crying (*Id.* ¶¶ 73–74), that she would stay in her classroom to avoid negative treatment from her coworkers (*Id.* ¶¶ 75–76), and that ultimately, she sought mental health treatment for their actions. (*Id.*) All in all, Street alleges these acts occurred for more than one calendar year.

Taken as true, a reasonable juror could find that Street both "subjectively perceived the environment to be abusive," and that her work environment was objectively one "that a reasonable person would find hostile or abusive." *Harris*, 510 U.S. at 21.

As a result, the court **DENIES** Ball and Freemon's motion to dismiss this count.

- ## Count 6: Equal Protection, disparate treatment (Board and Ball)

Street next bring §1983 claims based on §1981 and Equal Protection against the Board and Superintendent Ball in his individual capacity for denying Street the opportunity to speak based on her race, while allowing a similarly situated black employee to speak at a later meeting.

As the court discussed above, Superintendent Ball lacked the authority to deprive Street the opportunity to speak at Board meetings, so this claim against him must fail.

As for the Board, Street's "class of one" claim requires Street to "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). There is "no reason that a plaintiff in a 'class of one' case should be subjected to a more lenient 'similarly situated' requirement that [the Eleventh Circuit] ha[s] imposed in other contexts." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1204–05 (11th Cir. 2007). To establish a prima facie case of discrimination, Street must establish that she is "similarly situated in all material respects" with her proffered comparator. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019). But at the pleading stage, she need not plead a prima facie case of discrimination. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). Instead, Street's complaint only needs to "set out enough factual content to allow a court to draw the reasonable inference" of disparate treatment. *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1023 (11th Cir. 2016). To survive a motion to dismiss, the complaint must state, "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

While Street was allowed to speak, she was not listed on the agenda, the meeting was listed as "closed" instead of "public," it was broadcast over YouTube instead of Zoom (the normal platform), and she could not have a witness speak on her behalf. Members of the public were denied entry to the meeting and the YouTube stream malfunctioned, so other members of the public could not view it. Then when Street began to read her preapproved letter, the Board chair stopped her and did not allow her to continue speaking.

Street contrasts her experience with a black system employee, Darius Williams, who was allowed to speak at a future meeting with no restrictions. Williams was allowed to go over his allotted time for speaking, members of the public were allowed to attend, and a person could speak on his behalf.

The Board argues that the differences in Williams and Street prevent Williams from being a valid comparator. First, the Board points out that Williams was a principal who was speaking about his right to continued employment, which could implicate due process concerns, while Street was a teacher who sought to speak about her alleged mistreatment by the Board and her co-workers. Second, they point out that Williams and Street had different histories with the Board; Street had a multi-year, multi-faceted dialogue with the Board and its administrators, but nothing in the complaint references the same relationship for Williams. And finally, the Board points out the two employees sought to speak at different meetings with different agendas, and that there were different technical conditions.

All that may be true. But at this early stage, Street only needs to allege "enough factual content to allow a court to draw the reasonable inference" of disparate treatment. *Equal Emp. Opportunity Comm'n*, 852 F.3d at 1023. Street has met that burden, so the court denies the Board's motion to dismiss Count 6.

As stated previously, the court will grant Superintendent Ball's motion to dismiss Count 6 because he lacked the authority to prevent Street from speaking at the Board meeting.

- **Count 7: Equal Protection, retaliation (all defendants)**

Finally, Street brings a claim under §1983 against all defendants for retaliating against her for filing an EEOC complaint of gender discrimination. This claim differs from her First Amendment Retaliation claim, because that claim centered on speech that she alleged was a matter of public concern in her EEOC complaint, while this claim turns on the gender discrimination she complained about in her EEOC complaint. The defendants correctly note that a claim of gender-based retaliation "simply does not implicate the Equal Protection Clause." *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997); *see also Ratliff v. DeKalb Cnty., Ga.,* 62 F.3d 338, 340 (11th Cir.1995) ("[N]o clearly established right exists under the equal protection clause to be free from

retaliation."). So the court grants the defendants' motions to dismiss Count 7.

## CONCLUSION

For these reasons, the courts rules as follows on the pending motions to dismiss:

- **Count 1 (defamation)**: the court denies Ball and Freemon's motion to dismiss;
- **Count 2 (false light)**: the court denies Ball and Freemon's motion to dismiss;
- **Count 3 (First Amendment prior restraint)**: the court grants all Defendants' motions to dismiss;
- **Count 4 (First Amendment retaliation)**: the court grants all Defendants' motions to dismiss;
- **Count 5 (hostile work environment)**: the court grants the Board's motion to dismiss but denies Ball and Freemon's motion;
- **Count 6 (Equal Protection disparate treatment)**: the court grants Ball and Freemon's motion to dismiss but denies the Board's motion; and,
- **Count 7 (Equal Protection retaliation)**: the court grants all Defendants' motions to dismiss.

The court will enter a separate order that carries out this opinion.

**DONE** and **ORDERED** on March 14, 2023.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE